## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DRISS EL-AKRICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-3041 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS; | ) | |
| KAREN MORANSKI, Associate | ) | |
| Vice-Chancellor, in her Official | ) | |
| and Individual Capacity; | ) | |
| JONATHAN GOLDBERGBELLE, | ) | |
| Senior Director of International | ) | |
| Programs and Internships, in his | ) | |
| Official and Individual Capacity; | ) | |
| LAURA ALEXANDER, Senior | ) | |
| Director Human Resources, in her | ) | |
| Official and Individual Capacity; | ) | |
| DONNA MCNEELY, Executive | ) | |
| Director of the University Ethics | ) | |
| and Compliance Office, in her | ) | |
| Official and Individual Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss

Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6) (d/e 32) filed by Defendants Board of Trustees of the University of Illinois, Karen Moranski, Jonathan GoldbergBelle, and Laura Alexander. The Motion is GRANTED IN PART and DENIED IN PART. Counts VI and VII are dismissed without prejudice and with leave to replead. Plaintiff Driss El-Akrich is also granted leave to file an amended complaint clarifying which Defendant(s) are named in which counts. Counts I, II, III, IV, V, VIII, and IX[1] remain.

## I. JURISDICTION

This Court has subject matter jurisdiction because Plaintiff's claims are based on federal law: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The Court has supplemental jurisdiction over the State

---

[1] Plaintiff's complaint contains two counts labeled Count VI. The parties treat the second Count VI as Count IX, and the Court will do the same. Plaintiff shall correct this mistake when he amends the complaint.

law claim pursuant to 28 U.S.C. § 1367.  Venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  28 U.S.C. § 1391(b)(2).

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  <u>Christensen v. Cnty. of Boone, Ill.</u>, 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendants fair notice of the claims.  <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor.  <u>Id.</u> However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause

of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When considering a Rule 12(b)(1) motion, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff.  Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).  However, the plaintiff bears the burden of proving the jurisdictional requirements have been met. Ctr. For Dermatology & Skin Cancer Ltd. v. Burwell, 770 F.3d 586, 588 (7th Cir. 2014).

### III. FACTS

In November 20, 2017, Plaintiff filed his Second Amended Complaint against the Board of Trustees of the University of Illinois (the University); Karen Moranski, the Associate Vice-Chancellor of Undergraduate Education at the University of Illinois—Springfield (UIS); Jonathan GoldbergBelle, the Senior Director of International Programs and Internships at UIS; Laura Alexander, the Senior Director of Human Resources at UIS; and Donna McNeeley, the

Director of the University Ethics and Compliance Office at UIS. The claims against the individuals are brought against them in both their official and individual capacities.

The Second Amended Complaint contains the following allegations, which the Court accepts as true for purposes of the motion to dismiss. <u>Tamayo</u>, 526 F.3d at 1081.

Plaintiff is a Doctoral Candidate from Morocco, who was, at the time of the events in question, on a student visa. Plaintiff is Middle Eastern/Arab and Muslim.

On August 16, 2011, Plaintiff began his employment with the University as a part-time adjunct instructor in the Intensive English Program (IEP). The IEP provides high quality teaching of English to speakers of other languages. The goal is to provide non-native speakers the skills they need to study at an American university.

On June 15, 2013, Plaintiff was promoted to Interim Director of the IEP. Plaintiff was in charge of strategic planning, including program development, curriculum, and assessment. He was charged with growing the program and setting up policies and procedures required by the Commission on English Language

Program Accreditation (CEA).  It was the University's goal to obtain CEA accreditation for the IEP.  Plaintiff was also responsible for hiring, supervision, overall training, and professional development for faculty and support staff.  His job duties included promoting and actively recruiting for the IEP.  The program grew under Plaintiff, mainly with Middle Eastern/Arab Muslim students.

In January 2014, the IEP hired Jacqueline Tanner as a Visiting Clinical Instructor to develop the policies and procedures necessary to obtain accreditation from the CEA.  Plaintiff alleges that Tanner made complaints of discrimination and ultimately suffered from retaliation.  Tanner has also filed a lawsuit in this Court, Case No. 17-3039.

On July 1, 2015, the IEP underwent a reorganization.  On July 15, 2015, Defendant GoldbergBelle became Plaintiff's immediate supervisor.  Prior to the reorganization, GoldbergBelle conducted an assessment of IEP.  GoldbergBelle met with Plaintiff and inquired about the program's growth, the Middle Eastern/Arab Muslim students, and the future goals of the program.

On August 3, 2015, Plaintiff met with Defendant Moranski, GoldbergBelle's supervisor, and reported discriminatory behavior by GoldbergBelle and his Program Coordinator, Barbara Sykes, against exchange students in the Proyecta program from Mexico and discriminatory behavior against Plaintiff. The discriminatory actions included GoldbergBelle initially refusing to issue visas for the Mexican students claiming, "it was too much work." GoldbergBelle later stopped Plaintiff from collecting fees in cash from the Mexican students, even though cash was the only method of payment available to these exchange students. When GoldbergBelle learned that Plaintiff was collecting fees from the students and taking the cash to the cashier's office, GoldbergBelle insisted that his Business Administrative Assistant, Linette Hughes, and his Staff Clerk, Ashley Towel, accompany Plaintiff to verify that Plaintiff was giving all of the cash to the cashier's office. GoldbergBelle would also not allow Plaintiff to pay for the transportation of Mexican students to the St. Louis airport out of the funds collected from the Mexican students, but GoldbergBelle always provided transportation to his Asian exchange students. Moranski did not investigate Plaintiff's complaints.

In September 2015, GoldbergBelle presented his Assessment Report.  As part of the Report, GoldbergBelle took over most of Plaintiff's Interim Director duties.  GoldbergBelle decided, contrary to IEP procedures, that he (GoldbergBelle) would conduct all IEP faculty meetings.  GoldbergBelle also decided that all hiring in the IEP would be done under his direction, contrary to the CEA guidelines.  Plaintiff's duties were now to be conducted jointly with either GoldbergBelle or Tanner.  The only job Plaintiff could do unsupervised was to conduct a Faculty Development Seminar where there would be several white faculty members present to observe him.

In October 2015, GoldbergBelle indicated that he, GoldbergBelle, would be in charge of issuing visas for all IEP students and directed all teachers to send absences and grades to him.  This action obstructed Plaintiff's ability to perform his responsibilities.  GoldbergBelle also decided that he would be responsible for terminating those IEP students who failed to make satisfactory progress in the IEP program.

Plaintiff alleges that GoldbergBelle treated him with suspicion, even though Plaintiff was following the same procedures

for reporting student absences as his white, Jewish predecessor. GoldbergBelle and Moranski refused to address Plaintiff as the Interim Director of IEP. Plaintiff also alleges that GoldbergBelle was very concerned about the Middle Eastern/Arab Muslim students and their absences, telling Plaintiff that Plaintiff should have deported a Middle Eastern student who missed more than one class. However, GoldbergBelle was not concerned when two Chinese students were gone for almost an entire semester or when a Vietnamese student took a placement test in the summer of 2015 and then disappeared until the fall semester.

During the first session in the fall of 2015, Plaintiff reported to Defendants GoldbergBelle and Moranski insubordination by Sue Alexander[2], an adjunct professor. Sue Alexander told Plaintiff she was reporting absences to GoldbergBelle and not to Plaintiff because it was a matter of "Homeland Security" and "it was the American Way."

On October 2015, GoldbergBelle's Business Administrative Assistant, Hughes, opened mail addressed to Plaintiff without his

---

[2] The Court will refer to Sue Alexander by her full name so as not confuse her with Defendant Laura Alexander.

permission. Hughes took tuition checks and did not notify Plaintiff so that he could balance the student accounts.

In the fall of 2015, Plaintiff met with Defendant Moranski and reported that GoldbergBelle was not following established procedures under the CEA guidelines. Plaintiff also complained that he was being marginalized by GoldbergBelle, who had created a hostile environment and made it difficult for Plaintiff to do his job. Plaintiff reported that Hughes would not allow Plaintiff to purchase routine items for the IEP department unless approved by GoldbergBelle. Moreover, Plaintiff was kept "out of the information loop." Sec. Am. Compl. ¶ 43.

Plaintiff learned of complaints that Middle Eastern/Arab Muslim students made to Tanner against adjunct professors Rebecca Damery (Damery) and Sue Alexander, alleging disparate treatment, including: (1) Damery's refusal to allow a Middle Eastern/Arab Muslim student to attend her class, even though he was on the class roster, and ordering him to obtain a note from the IEP office to verify that he was correctly placed her in class, even though she knew there was no staff in the office available to provide him with such a note; and (2) disparity between the grades

and progression reports received by two Middle Eastern/Arab Muslim students and a female Vietnamese student in Sue Alexander's class.

On November 25, 2015, during a bi-weekly meeting, Plaintiff reported students' complaints of discrimination to Defendants Moranski and GoldbergBelle. Plaintiff also raised concerns about the inexperience of the present IEP faculty in teaching CEA accredited programs. Plaintiff believed that Moranski and GoldbergBelle agreed to hire three new CEA experienced facility for spring of 2016 and that the adjunct professors' hours would be reduced. Plaintiff was ultimately informed, however, that it was too late to hire new teachers.

GoldbergBelle asked Plaintiff to prepare a schedule for spring of 2016. Plaintiff submitted for approval a preliminary class schedule that did not include Sue Alexander and Damery. On December 23, 2015, Plaintiff was informed that Moranski decided to give Sue Alexander and Damery one course each. That schedule was amended to give Sue Alexander and Damery one course each.

On January 4, 2016, Plaintiff met with the Provost, Lynn Pardie, and reported in detail the discrimination faced by the

Middle Eastern/Arab Muslim students and by himself in the IEP Department. He complained about the hostility, suspicion, and harassment perpetuated by Defendant GoldbergBelle and his staff, as well as the insubordination of the adjuncts, Sue Alexander and Damery. He reported that all of this made it difficult for him to perform his duties.

On January 6, 2016, Plaintiff was advised by Defendant Laura Alexander, Senior Director of Human Resources, that Sue Alexander and Damery had complained because their hours had been reduced for the spring semester in retaliation. Defendant Laura Alexander wanted to meet with Plaintiff. GoldbergBelle told Plaintiff not to respond to or contact Laura Alexander until he, GoldbergBelle, had a chance to discuss it with his supervisor, Moranski. Moranski also instructed Plaintiff to follow GoldbergBelle's advice.

On January 19, 2016, Defendant Donna McNeely, Executive Director of the Ethics and Compliance Office, contacted Plaintiff to schedule a meeting to address concerns with the IEP. On January 25, 2016, Plaintiff met with McNeely and Traci Roth, Associate Director of Ethics, about the IEP program and the class scheduling

process.  Defendant McNeely wanted to know why Sue Alexander and Damery's hours were reduced.  Defendant McNeely also asked Plaintiff about the growth of the program with Middle Eastern/Arab Muslim students.

In response, Plaintiff read Defendant Moranski's email to Defendant McNeely in which Moranski stated that she would make the final determination regarding the spring of 2016 schedule. Plaintiff also reported the students' complaints against Sue Alexander and Damery and reported the discrimination and hostile environment created by Defendants GoldbergBelle and Moranski against Plaintiff and the Middle Eastern/Arab Muslim students.

On February 4, 2016, Defendant GoldbergBelle refused to give IEP Program Assistant Badaria Luteify, a Middle Eastern/Arab Muslim, University credit cards, despite the fact that the same cards were previously provided to white, Christian IEP Program Assistants in the IEP department.  Plaintiff reported this to the Associate Chancellor for Public Affairs, Ryan Croke.  Plaintiff also informed Croke of discrimination against Middle Eastern/Arab Muslim students by Defendant GoldbergBelle's Program Coordinator, Barbara Sykes, who complained (the Second

Amended Complaint does not state to whom she complained) that she feared for her safety when Middle Eastern men were dropped off in the driveway in front of the Brookens library at UIS.

On February 23, 2016, Plaintiff complained to Moranski about GoldbergBelle's treatment of Luteify and complained that the environment was too hostile for him to perform his duties. Plaintiff stated he was going to go to the Equal Employment Opportunity Commission (EEOC). Defendant Moranski turned red and stated she would not support Plaintiff if he went to the EEOC.

On February 29, 2016, Moranski and GoldbergBelle gave Plaintiff a letter stating that Defendant McNeely had found Plaintiff guilty of retaliation and that Plaintiff was being placed on administrative leave immediately. Plaintiff was told to have no contact with anyone from the University, not even for his doctoral studies.

On March 3, 2016, Plaintiff met with Defendants Alexander and Moranski in the Human Resources Office and shared the students' complaints. Defendant Laura Alexander wanted to know why Sue Alexander and Damery were not on the preliminary schedule and why their hours were reduced to one course each in

spring of 2016. Plaintiff read Moranski's email, which stated that Moranski was going to decide who to hire for spring of 2016. Plaintiff also shared the Middle Eastern/Arab Muslim students' complaints about Sue Alexander and Damery. Plaintiff told Laura Alexander that he did not have independent authority to hire anyone without GoldbergBelle and Moranski's approval.

On March 18, 2016, Plaintiff received Defendant Laura Alexander's Recommendation Letter in which she found that Plaintiff was solely responsible for retaliation against Sue Alexander and Damery. Laura Alexander recommended that Plaintiff be terminated immediately. Laura Alexander praised Defendants Moranski and GoldbergBelle and stated it was only by their intervention that Sue Alexander and Damery were able to teach any courses in spring of 2016.

On March 21, 2016, Plaintiff and Tanner met with Deanie Brown, Associate Chancellor, Office of Access and Equal Opportunity, about their complaints of discrimination against Plaintiff by Defendant GoldbergBelle, the discrimination against the Middle Eastern/Arab Muslim students, and the pre-textual

retaliation claim brought against Plaintiff and Tanner for reporting discrimination.

On April 27, 2016, Defendant Moranski sent an email to Plaintiff informing him that he may return to active work status through the completion of his contract on May 15, 2016. His duties would, however, be separate from IEP and his contract would not be renewed. Plaintiff was directed to work from home and obtain prior approval from Moranski for all visits to the campus. He was not to contact anyone in IEP and was directed to forward all emails and contacts to GoldbergBelle.

Plaintiff alleges that the wrongful ethics violation on his record has caused significant harm to Plaintiff's career and professional reputation. He has been unable to procure an academic position in his field in the United States.

On May 11, 2016, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the EEOC. See Garcia v. Vill. of Mount Prospect, 360 F. 3d 630, 642 n. 13 (7th Cir. 2004) (recognizing that, under the dual filing system, filing a charge with the EEOC is "considered to be a filing with the corresponding state agency, and vice versa"). Plaintiff alleged

national origin discrimination (Morocco) between July 2015 and February 29, 2016 in that GoldbergBelle subjected Plaintiff to unequal terms and conditions of employment when he took away Plaintiff's duties and supervisory authority.

Plaintiff also alleged that he was retaliated against for, on January 4, 2016, opposing discrimination to the University. January 4 was the day Plaintiff spoke to the Provost. Plaintiff asserted that he was placed on administrative leave, denied access to student's accounts, had his duties taken away, and was banned from campus and student contact.

On May 23, 2016, Plaintiff filed a second charge of discrimination. The second charge alleged that he was subjected to unequal terms and conditions of employment from July 2015 to February 29, 2016 based on his Muslim religion. Plaintiff alleged that Defendant GoldbergBelle took away Plaintiff's duties and supervisory authority.

In December 2017, Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (d/e 33). On January 22, 2018, Plaintiff filed his response.

# IV. ANALYSIS

## A.   Defendants' Motion to Dismiss the Title VII Claims, Counts I, II, IV, and V, is Denied

Plaintiff's Second Amended Complaint contains four counts brought under Title VII alleging that the University discriminated against Plaintiff on the basis of national origin (Count I), race (Count II), and religion (Count IV), and retaliated against him for his complaints of discrimination (Count V).  The University moves to dismiss the Title VII counts on the grounds that Plaintiff failed to exhaust his administrative remedies [3] and the Title VII claims fail to contain the necessary allegations.

### 1.   Plaintiff Exhausted His Administrative Remedies

The University argues that the Second Amended Complaint contains claims that were not included in Plaintiff's two charges of

_____

[3] Although the failure to exhaust is an affirmative defense, dismissal under Rule 12(b)(6) is appropriate where the plaintiff pleads facts sufficient to establish the defense. See Mosely v Bd. of Educ. of City of Chi., 434 F.3d 527, 533 (7th Cir. 2006) (failure to exhaust is an affirmative defense); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (dismissal based on an affirmative defense proper where the plaintiff alleges facts sufficient to establish the defense).  Plaintiff has attached the charges of discrimination to the complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

discrimination and those claims should be dismissed for failure to exhaust administrative remedies.

Before filing a Title VII lawsuit, a plaintiff must exhaust his administrative remedies by filing a timely charge with the EEOC and receiving a right to sue letter. <u>Doe v. Oberweis Dairy</u>, 456 F.3d 704, 708 (7th Cir. 2006). A plaintiff may not bring claims in a lawsuit under Title VII that were not included in the charge of discrimination. <u>Peters v. Renaissance Hotel Operating Co.</u>, 307 F.3d 535, 550 (7th Cir. 2002). This exhaustion requirement gives the EEOC and the employer a chance to settle the dispute and also gives the employer notice of the employee's grievances. <u>Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.</u>, 804 F.3d 826, 831 (7th Cir. 2015).

Because most charges of discrimination are drafted by laypersons, courts review the scope of the charge liberally. <u>Huri</u>, 804 F.3d at 831. Consequently, a plaintiff need not include in his charge every fact that forms the basis of a subsequent lawsuit's claims. <u>Id.</u> Nonetheless, general allegations of discrimination in the charge are not sufficient to justify bringing any discrimination

theory in federal court.  <u>McQueen v. City of Chi.</u>, 803 F. Supp. 2d 892, 902 (N.D. Ill. 2011).

In particular, a plaintiff can bring federal court claims that were not included in the charge of discrimination if the federal claims are "like or reasonably related to the allegations of the charge and growing out of such allegations."  <u>Cheek v. W. & S. Life Ins. Co.</u>, 31 F.3d 497, 500 (7th Cir. 1994) (internal quotation marks omitted).  The test is satisfied if "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge."  <u>Id.</u> (noting that the second part of the test is difficult because what might be discovered during the investigation is speculative and finding that the court need not so speculate when the plaintiff fails to satisfy the first part of the test).

Claims are not considered "like or reasonably related" just because they both assert forms of discrimination.  <u>Cheek</u>, 31 F.3d at 501 (noting that, because an employer can discriminate on the basis of sex in numerous ways, it is not enough that the complaint and the charge both allege sex discrimination; there must be a

factual relationship between the claims).  To be like or reasonably related, the federal claim and the claim in the charge of discrimination must, at a minimum, describe the same conduct and implicate the same individuals.  <u>Moore v. Vital Prods., Inc.</u>, 641 F.3d 253, 258 (7th Cir. 2011).

The University argues that Plaintiff's first charge of discrimination alleged that Plaintiff was retaliated against for opposing discrimination on January 4, 2016, when Plaintiff told the Provost about the discrimination against the students and himself.  The Second Amended Complaint, however, alleges Plaintiff also reported discrimination on August 3, 2015—when he reported to Moranski the discrimination against the students and himself—and November 25, 2015—when he reported to Moranski and GoldbergBelle the students' complaints of discrimination.  The University argues that those reports of discrimination were not brought before the EEOC through a charge of discrimination.  Therefore, the University asks the Court to strike those allegations and other allegations not referenced in the charges of discrimination.

The Court will not strike the allegations.  Plaintiff's first charge of discrimination referred to conduct occurring between July 2015 and February 29, 2016 with regard to the national origin claim.  While the retaliation claim referenced a specific date on which Plaintiff opposed discrimination, the discrimination opposed on that date involved the same conduct and the same individuals as that alleged on the earlier occasions and fell between the dates alleged with regard to the national origin claim. Therefore, the claims in Plaintiff's complaint could be expected to grow out of an EEOC investigation of the charge.  The Court will, therefore, not strike the additional allegations on this ground.

The University also argues that Plaintiff's charges of discrimination do not contain a race discrimination claim.  When the complaint alleges a type of discrimination not alleged in the charge of discrimination, the claim is not within the scope of the charges unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.  <u>Cheek</u>, 31 F.3d at 503.

In this case, Plaintiff's race discrimination charge involves the same facts and the same individual, Defendant GoldbergBelle, as

the allegations in the charges of discrimination. Admittedly, the charges of discrimination only refer to national origin—Moroccan— and the Muslim religion. However, the population of Morocco is 99% Arab-Berber and Muslim. See The World Factbook,

https://www.cia.gov/library/publications/the-world-factbook/geos/mo.html (last visited February 26, 2018). Because the factual predicate for Plaintiff's national origin, religion, and race claim are the same—the alleged discrimination by GoldbergBelle against Plaintiff—the Court concludes that the EEOC would have reasonably investigated discrimination on race, national origin, and religion, even though Plaintiff only alleged national origin and religion discrimination. See, e.g., Zayadeen v. Abbott Molecular, Inc., No. 10 C 4621, 2013 WL 361726, at *7 (N.D. Ill. Jan. 30, 2013) (finding that a charge of discrimination that only alleged national origin discrimination (Jordanian) was reasonably related to a race discrimination (Arab) claim because the discrimination was based on the same factual predicate, Jordan is 98% Arab, and the charge specifically referenced an incident where the plaintiff was harassed for speaking Arabic); Torres v City of Chi., No. 99 C 6622, 2000 WL 549588, at *2 (N.D.

Ill. May 1, 2000) (finding that the dual understanding of the term "Hispanic" would have reasonably caused the EEOC to investigate discrimination based both on national origin and race, even though the plaintiffs only marked the "national origin" box in the EEOC charge).

### 2.   Counts I, II, IV, and V State a Claim for Relief

The University next argues that Plaintiff's Title VII claims fail to state a claim because the allegations are conclusory. The University asserts that Plaintiff fails to articulate how he was discriminated against or why any particular defendant would be motivated by Plaintiff's national origin, race, or religion.

Plaintiff is not required to plead his claim with the level of specificity suggested by Defendant. Even after the United States Supreme Court's decisions in Twombly and Iqbal—requiring a complaint contain sufficient detail and that the allegations plausibly suggest that the plaintiff has a right to relief—the Seventh Circuit has "reaffirmed the minimal pleading standard for simple claims of" illegal discrimination. Tamayo, 526 F.3d at 1084 (involving sex discrimination) (citing E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773, 781-82 (7th Cir. 2007)). That is, a

complaint alleging discrimination on the basis of race, color, religion, sex, or national origin need only allege that the employer instituted a specified adverse employment action against the plaintiff on the basis of race, color, religion, sex, or national origin. See Tamayo, 526 F.3d at 1084; Concentra, 496 F.3d at 781-82 (providing that "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim"). Moreover, a plaintiff need not plead a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to state a claim. See Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1028 (7th Cir. 2013).

Plaintiff's Second Amended Complaint includes sufficient facts to support his Title VII discrimination claims in Counts I, II, and IV. Plaintiff alleges that he suffered adverse employment action on the basis of his national origin, race, and religion.

The University argues, however, that Plaintiff did not suffer an adverse employment action because Plaintiff only alleges that his job duties changed, GoldbergBelle took over some unspecified duties, Plaintiff had a supervisor, teachers sent absences and

grades to GoldbergBelle, and Plaintiff had to obtain approval to make purchases.  Defs. Mem. at 10.

Title VII protects employees from discriminatory actions with respect to "compensation, terms, conditions, or privileges of employment."  David v. Bd. of Trs. of Cmty. College Dist. No. 508, 846 F. 3d 216, 225 n. 35 (7th Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Not everything that makes an employee unhappy constitutes an actionable adverse employment action.  Porter v. City of Chi., 700 F.3d 944, 954 (7th Cir. 2012).  That is, the action must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  Nagle v. Vill of Calumet Park, 554 F.3d 1106, 1120 (7th Cir. 2009) (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993, F.2d 132, 136 (7th Cir. 1993)).  An adverse employment action includes:

> (1) diminishing an employee's compensation, fringe benefits, or other financial terms of employment, including termination; (2) reducing long-term career prospects by preventing him from using the skills in which he is trained and experienced so that the skills are likely to atrophy and his career is likely to be stunted; and (3) changing the conditions in which an employee works  . . in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace."

Alamo v. Bliss, 864 F.3d 541, 552 (7th Cir. 2017) (Title VII national origin discrimination claim) (internal quotation marks, emphasis, and citations omitted).

In Alamo, the Seventh Circuit found the allegations that the employer excessively assigned the plaintiff to work at different locations plausibly alleged an adverse employment action. Alamo, 864 F.3d at 553. Those assignments could be construed as a means to marginalize and stigmatize the plaintiff in his department, may have made it difficult for the plaintiff to continue to perform his job at the same level, and may have impacted his long-term career prospects. Id.

Similarly, here, Plaintiff has plausibly alleged that the University took away or altered Plaintiff's job duties in such a way that it made it difficult, if not impossible, for him to competently perform his job and the action impacted his future career prospects. Therefore, Plaintiff has alleged that he suffered an adverse employment action.

The University next argues that Plaintiff fails to allege sufficient facts to state a claim for retaliation in Count V. The

University asserts that Plaintiff fails to allege he engaged in a statutorily protected activity because opposing discrimination against students does not constitute opposing unlawful employment discrimination and is not a statutorily protected activity under Title VII.

Under Title VII, it is unlawful to retaliate against an employee because he has opposed a practice that Title VII forbids or because he has filed a charge with the EEOC.  <u>See</u> 42 U.S.C. § 2000e-3(a); <u>Burlington N. and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 60 (2006).  To plead a retaliation claim, Plaintiff must allege that he engaged in a statutorily protected activity and that he was subjected to an adverse employment action as a result.  <u>See</u> <u>Luevano</u>, 722 F.3d at 1029.

Plaintiff agrees that reporting discrimination on behalf of students is not a statutorily protected activity under Title VII.  <u>See</u> <u>Hatcher v. Bd. of Trs. of S. Ill. Univ.</u>, 829 F.3d 531, 537 (7th Cir. 2016) (finding that the plaintiff's act of reporting sexual harassment on behalf of a student who was not an employee of the school is not statutorily protected activity under Title VII), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Ortiz v. Werner Enter., Inc.</u>, 834

F.3d 760, 765 (7th Cir. 2016) (holding that the "convincing mosaic" is not a legal test and overruling <u>Hatcher</u> and other cases for the court's treatment of "convincing mosaic" as a legal requirement). Plaintiff asserts, however, that he has also alleged that University administrators and employees discriminated against him and that he reported that discrimination to his supervisors and to others at the University.

Viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged a retaliation claim by alleging that he opposed discrimination against himself and that he was retaliated against for opposing that discrimination. The Court also notes that Plaintiff alleges he opposed discrimination against another employee, IEP Program Assistant Badaria Luteify, a Middle Eastern/Arab Muslim. Therefore, Plaintiff states a claim for retaliation in Count V.

**B.** **Defendants' Motion to Dismiss the § 1981 Claim, Count III, is Granted in Part and Denied in Part**

Section 1981 prohibits racial discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981; <u>see</u> <u>also</u> <u>Saint Francis Coll. V. Al-Khazraji</u>, 481 U.S. 604, 613 (1987) (defining

"race" under § 1981 broadly to include "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"). An employment discrimination claim may be made under § 1981. See, e.g., Fane v. Locke Reynolds, LLP, 480 F.3d 534, 538 (7th Cir. 2007) (wherein the plaintiff challenged her termination under Title VII and § 1981).[4]

Defendants move to dismiss this Count on two grounds. First, Defendants argue that, to the extent Count III is directed against the individual defendants in their official capacities, the claim is barred by sovereign immunity. Plaintiff agrees that Count III is only brought against the individual defendants in their individual capacities and requests leave of Court to clarify this in the caption under Count III. The Court dismisses this claim but grants Plaintiff leave to amend.

---

[4] The parties do not address Campbell v. Forest Pres. Dist. of Cook Cnty., Ill., 752 F.3d 665, 671 (7th Cir. 2014), cert. denied, 135 S. Ct. 947 (2015), which held that § 1983 provides the exclusive remedy for relief for violations of the rights protected by § 1981 when the claim is asserted against state actors. See also Nitch v. Ester, No. 16-CV-06033, 2017 WL 465088, at *4 n.5 (N.D. Ill. Oct. 17, 2017) (noting that the plaintiff's § 1981 claim was impermissibly lodged against a state actor" regardless of whether the defendants were sued in their official or individual capacities).

Second, Defendants argue that the § 1981 claim against the individual defendants in their individual capacities is also barred by sovereign immunity because any "judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Def. Mem. at 15-16 (quoting Luder v. Endicott, 253 F.3d 1020, 1023 (7th Cir. 2001)).

As Defendants correctly note, an individual capacity suit is barred by sovereign immunity when the claim is really and substantially against the State. Luder, 253 F.3d at 1023. An individual capacity lawsuit is substantially against the State when the judgment would result in the judgment being paid by the State rather than the individual defendants, such as where the plaintiff seeks backpay and other monetary compensation based on an employment contract. Omosegbon v. Wells, 335 F.3d 668, 673 (7th Cir. 2003) (finding, in a § 1983 case, that the claim was really one against the State where the plaintiff sought "backpay and other forms of monetary compensation based on an employment contract" and the individuals were not parties to the contract in

their individual capacities); <u>Altman v. Dep't of Children & Family Servs.</u>, 666 F. Supp. 2d 918, 929 (S.D. Ill. 2009) (finding, in § 1981 case, that the claim was really one against the State where the plaintiff sought new supervisors and reversal of discriminatory action, relief that was only available from the State); <u>Harden v. Bd. of Trs. E. Ill. Univ.</u>, No. 12-CV-2199, 2013 WL 6248500, at *9 (C.D. Ill. Dec. 2, 2013) (finding, in § 1981 case, that the plaintiff sought monetary compensation based on the employment contract and, therefore, the claim was not a bona fide individual capacity suit but one seeking relief that would "expend itself on the public treasury").

Here, Plaintiff seeks damages associated with his employment contract with the University.  Sec. Am. Compl. ¶ 125 (alleging loss of past income and benefits).  However, Plaintiff also seeks emotional distress damages.  <u>Id.</u> (alleging emotional distress, humiliation, and embarrassment).  Damages for mental distress, emotional distress, and humiliation are available for a § 1981 claim.  <u>See</u> <u>Musikiwamba v. ESSI, Inc.</u>, 760 F.2d 740, 748 (7th Cir. 1985) (recognizing the availability of compensatory damages, such as mental humiliation and emotional harm, under § 1981).

Therefore, at this juncture, the Court will not dismiss the individual capacity claims on the ground that the claim is substantially against the State.

**C.    Defendants' Motion to Dismiss Count VI, the § 1983 Claim Alleging First Amendment Retaliation, is Granted**

In Count VI, Plaintiff brings a claim under 42 U.S.C. § 1983. Plaintiff alleges that he reported complaints about discrimination against Middle Eastern/Arab Muslim and Mexican students and discrimination against himself, and that Defendants retaliated against him for making those complaints.

Defendants move to dismiss Count VI on numerous grounds. First, Defendants argue that the § 1983 claim against the individual defendants in their official capacities is barred by sovereign immunity. Plaintiff agrees, stating that he has only pled Count VI against the defendants in their individual capacities. Plaintiff requests leave to clarify this.

Second, Defendants argue that the § 1983 claim against the individual defendants in their individual capacities is also barred by sovereign immunity for the same reason raised in response to the § 1981 claim.  For the same reason this Court articulated with

regard to Plaintiff's § 1981 claim, the Court finds that the § 1983 claim is not really and substantially against the State.  See Webb v. City of Chester, 813 F.2d 824, 836 (7th Cir. 1987) (damages for embarrassment, humiliation, and emotional distress are available in a § 1983 action).

Third, Defendants argue that Count VI fails to state a claim because Plaintiff has not plausibly alleged that his speech was made in his capacity as a private citizen instead of in his role as a UIS employee.  The Court agrees.

A public employee's speech is constitutionally protected if the speech was made as a private citizen and addressed a matter of public concern.  Forgue v. City of Chi., 873 F.3d 962, 966 (7th Cir. 2017).  Whether speech is constitutionally protected is a question of law.  Id.

"A public employee does not speak as a citizen when he speaks pursuant to his official duties."  Roake v. Forest Pres. Dist. of Cook Cnty., 849 F.3d 342, 346 (7th Cir. 2017) (internal quotation marks omitted) (citing Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)).  To determine whether an employee was acting as a citizen, the Court examines the duties the employee is

expected to perform and determines whether the speech "'owes its existence to a public employee's professional responsibilities.'" Callahan v. Fermon, 526 F.3d 1040, 1044 (7th Cir. 2008) (quoting Garcetti, 547 U.S. at 421). Plaintiff must plead specific facts that plausibly suggest that his speech was made as a private citizen and not in his capacity as Interim Director of IEP. See Hatcher, 829 F.3d at 538.

Plaintiff has not plausibly alleged that he made the complaints about discrimination against the students and himself as a citizen rather than as a public employee speaking pursuant to his official duties. An employee's speech about misconduct affecting an area within his responsibility is considered to be made pursuant to his employment even when he is not strictly required to make it. Hatcher, 829 F.3d at 539 (finding that the professor plaintiff was speaking in her faculty role when she reported sexual harassment against a student where she did not explain why she felt compelled to report the misconduct apart from the fact that she was a professor and believed it was her job to do so).

In this case, Plaintiff essentially alleges that he was reporting misconduct in an area within his responsibility as Interim

Director.  Plaintiff alleges that he was in charge of program development, curriculum, and assessment within the IEP.  He was responsible for supervision, training, and professional development for faculty and support staff.  He made some of the complaints about conduct of adjunct professors, his supervisor, and IEP support staff during IEP bi-weekly office meetings and made other complaints within official University channels.  As such, Plaintiff alleges he spoke as a public employee and not as a private citizen. See Roake, 849 F.3d at 346 (finding the police officer plaintiff had not plausibly alleged that he made complaints as a citizen when he shared the complaints only with his employer and the complaints focused exclusively on official misconduct by his fellow officers); Kubiak v. City of Chi., 810 F.3d 476, 482 (7th Cir. 2016) (affirming dismissal of First Amendment retaliation claim, finding the allegations demonstrated that police officer plaintiff did not speak as a citizen when she complained about being verbally assaulted by a coworker because her speech was intimately connected with her professional duties and she attempted to use official internal channels to report the misconduct).

Defendants also raised the qualified immunity defense. Because the Court finds that Count VI fails to state a claim, the Court will not address Defendants' qualified immunity argument. The Court will grant Plaintiff leave to amend Count VI. Plaintiff is advised that if he does so, and Defendants again raise qualified immunity, he bears the burden of demonstrating that he has asserted a violation of a constitutional right and that the right was clearly established at the time in question. <u>Levenstein v. Salafasky</u>, 164 F.3d 345, 351 (7th Cir. 1998).

**D.    Defendants' Motion to Dismiss Count VII, the § 1985 Conspiracy Claim, is Granted**

In Count VII, Plaintiff brings a claim pursuant to 42 U.S.C. § 1985(3). Section 1985(3) prohibits conspiracies to deprive a person of equal protection under the law where the conspiracy is motivated by "racial or other class-based discriminatory animus." <u>Smith v. Gomez</u>, 550 F. 3d 613, 617 (7th Cir. 2008).

Plaintiff alleges that Defendants Moranski, GoldbergBelle, Laura Alexander, and McNeely reached an agreement to remove Plaintiff from his position as IEP Interim Director in violation of Plaintiff's constitutional rights. Plaintiff alleges that the

Defendants committed overt acts and that their conduct was objectively unreasonable and undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

Defendants argue that Plaintiff's §1985(3) must be dismissed pursuant to the intracorporate conspiracy doctrine.

A conspiracy requires more than one person be involved in depriving the plaintiff of his rights or privileges. Xiong v. Wagner, 700 F.3d 282, 297 (7th Cir. 2012). The intracorporate conspiracy doctrine holds that "a conspiracy cannot exist solely between the members of the same entity." Payton v. Rush-Presbyterian-St. Luke's Med. Ctr. 184 F.3d 623, 633 (7th Cir. 1999). That is, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 110 (7th Cir. 1990) (citing Dombrowski v. Dowling, 459 F.2d 190, 196 (1972)).

This intracorporate conspiracy doctrine is not limited to managers, however, and applies to supervisors and subordinates working in the corporation's interest. Payton. 184 F.3d at 633. The Seventh Circuit has also extended the intracorporate

conspiracy doctrine to governmental entities. <u>Wright v. Ill. Dep't of Children & Family Servs.</u>, 40 F.3d 1492, 1508 (7th Cir. 1994)

Here, the intracorporate conspiracy applies because the four Defendants are employees of the same entity, the University/UIS, and were acting within the scope of their duties when they allegedly reached an agreement to remove Plaintiff from his position. Therefore, no conspiracy existed.

Plaintiff argues that the personal bias exception to the intracorporate conspiracy doctrine applies. The personal bias exception applies in egregious circumstances where the organization's employees were motivated solely by personal bias. <u>Hartman v Bd. of Trs. of Cmty Coll. Dist. No. 508</u>, 4 F.3d 465, 470 (7th Cir. 1993); <u>Payton</u>, 184 F.3d at 633 (stating that the exceptions to the intracorporate conspiracy doctrine exist in egregious circumstances). When individuals are motivated solely by personal bias, the corporation's interests play no part in the employees' collective action and, therefore, the employees do not act within the scope of their employment. <u>Hartman</u>, 4 F.3d at 470. A frequent example of personal bias noted in court cases is where the "Ku Klux Klan incorporates to avoid conspiracy liability for

'carrying out acts of violence.'" <u>Stone v. Bd. of Trs. of N. Ill. Univ.</u>, 38 F. Supp.3d 935, 950 (N.D. Ill. 2014) (quoting <u>Travis</u>, 921 F.2d at 110).

Plaintiff's complaint contains no allegations to plausibly suggest that Defendants were solely motivated by personal bias. <u>Stone</u>, 38 F. Supp. 3d at 950 (finding no plausible suggestion that the defendants were motivated solely by selfishness as opposed to the business of the running the university). Therefore, the Court will grant the Motion to Dismiss Count VII.

Defendants also raised the qualified immunity defense. Because the Court finds that Count VII fails to state a claim, the Court will not address Defendants' qualified immunity argument. The Court will grant Plaintiff leave to amend Count VII. Plaintiff is advised that if he does so, and Defendants again raise qualified immunity, he bears the burden of demonstrating that he has asserted a violation of a constitutional right and that the right was clearly established at the time in question. <u>Levenstein</u>, 164 F.3d at 351.

**E.     Defendants' Motion to Dismiss Count VIII, the Title VI claim, is Granted in Part and Denied in Part**

In Count VIII, Plaintiff brings a retaliation claim under Title VI of the Civil Rights Act of 1964.  Title VI of the Civil Rights Act prohibits discrimination on the basis of race by a recipient of federal funds:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  As Defendants note, the Seventh Circuit has not formally recognized a retaliation claim under Title VI, but other courts have recognized such a claim.  Defs. Mem. at 12 (citing Peters v Jenney, 327 F.3d 307 (4th Cir. 2003)).

In Count VIII, Plaintiff alleges that he was retaliated against for opposing a practice made unlawful by Title VI.  Specifically, Plaintiff made complaints about discrimination against Middle Eastern/Arab Muslim students and against himself by University officials and employees.  Plaintiff alleges that this protected speech was the motivational factor for the retaliation against him, which included being put on administrative leave and banned from the

University, although he was eventually allowed to work from home until his contract expired.

Defendants argue that the individual defendants cannot be sued under Title VI.  Plaintiff agrees that the only proper party in a Title VI suit is the University and that Count VIII is only brought against the University.

The University also argues that Count VIII fails to state a claim for retaliation.  The elements of a retaliation claim under Title VI include: (1) that the plaintiff engaged in protected activity; (2) the defendant took a materially adverse employment action against the plaintiff; and (3) a causal connection existed between the protected activity and the adverse action.  <u>Peters</u>, 327 F.3d at 321 (involving a motion for summary judgment).  The University claims that Plaintiff fails to demonstrate that he suffered a materially adverse employment action because he only alleged temporary employment restrictions followed by non-renewal of his contract.  Without citation to any authority, Defendants argue that these actions do not rise to the level of materially adverse action.

Some courts have applied the same standard to Title VI retaliation claims as are applied to Title VII retaliation claims. See Bowman v. Baltimore City Bd. of Sch. Comm'rs, 173 F. Supp.3d 242, 247 (D. Md. 2016) ("Title VII and Title VI claims of retaliation are examined under the same standard.").  Without further guidance from the parties, the Court will do the same.

In contrast to a Title VII discrimination claim, a Title VII anti-retaliation claim is not limited to discriminatory actions that affect the terms and conditions of employment.  Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006).  However, a plaintiff alleging Title VII retaliation still must ultimately show that the "alleged employment actions were materially adverse such that they would dissuade a reasonable person from engaging in protected activity." Henry v. Milwaukee Cnty., 539 F.3d 573, 586 (7th Cir. 2008).

In Count VIII, Plaintiff has alleged that he was put on administrative leave, banned from the campus, and his contract was not renewed.  Plaintiff does not allege whether the administrative leave was without pay.  See Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 787 (7th Cir. 2007) (finding Title VII

retaliation claim failed on summary judgment, noting that placement on paid administrative leave pending the results of a fitness-for-duty psychological examination was not a material adverse action). Nonetheless, the Court finds that Plaintiff has alleged that the University took action against him that would dissuade a reasonable person from engaging in protected activity by, at the very least, alleging that his contract was not renewed. See Walker v. Bd. of Regents of Univ. of Wis. Sys., 300 F.Supp.2d 836, 852 (W.D. Wis. 2004) (finding that the failure to renew a contract was a cognizable injury for purposes of § 1981, § 1983, and Title VII). Therefore, the Court will not dismiss Count VIII.

**F.     Defendants' Motion to Dismiss Count IX, the Illinois Civil Rights State Law Claim, is Denied**

In Count IX, Plaintiff brings a claim for retaliation under the Illinois Civil Rights Act, 740 ILCS 23/5(a). The Illinois Civil Rights Act provides:

> (a) No unit of State, county, or local government in Illinois shall:
>
> (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or

(2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender.

740 ILCS 23/5(a).

Defendants first argue that the individual defendants are improper defendants under the Illinois Civil Rights Act. Plaintiff agrees, noting that he only sues the University under the Illinois Civil Rights Act.

The University next argues that Count IX fails to state a claim because the Illinois Civil Rights Act is modeled after Title VI and the Title VI claim fails to state a claim. Because the Court found that Count VIII, the Title VI claim, does state a claim for relief, the Court will not dismiss Count IX on this basis.

Finally, the University argues that Count IX should be dismissed because it is duplicative of the Title VI claim. A court may dismiss duplicative claims when the two claims involve the same facts and injury. See, e.g., Barrow v. Blouin, 38 F.Supp.3d 916, 920 (N.D. Ill. 2014). The Court finds, however, that dismissal at this stage would be premature. Although the Illinois Civil Rights Act is based on Title VI (see Weiler v. Vill. of Oak Lawn, 86 F. Supp. 874, 889 (N.D. Ill. 2015)), one major difference is that a Title

VI claim requires that the defendant receive federal financial assistance while the Illinois Civil Rights Act contains no such limitation. Therefore, the two claims contain distinct elements. See, e.g., id. at 890 (declining to dismiss an Illinois Civil Rights Act claim as duplicative of a First Amendment claim where the claims had distinct elements). The Court will not dismiss Count IX as duplicative of Count VIII at this time.

## V. CONCLUSION

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (d/e 32) is GRANTED IN PART and DENIED IN PART.

(1)     Plaintiff shall file, on or before March 12, 2018, an amended complaint clarifying which Counts are brought against which Defendant(s), including that Counts III and VI are brought only against the individual defendants in their individual capacities and Counts VIII and IX are brought only against the University.

(2)     Counts VI and VII are dismissed without prejudice and with leave to replead.

(3)     Counts I, II, III, IV, V, VIII, and IX remain.

(4)     Defendants shall answer or otherwise respond to the
amended complaint on or before March 26, 2018.

**ENTERED: February 26, 2018**

**FOR THE COURT:**

_s/Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**